# IN THE COURT OF APPEALS OF IOWA

No. 18-0790
Filed June 20, 2018

**IN THE INTEREST OF K.H.-K.,**
**Minor Child,**

**R.H., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Buchanan County, Stephanie C. Rattenborg, District Associate Judge.


　　Father appeals from an order terminating his parental rights pursuant to Iowa Code chapter 232 (2017).  **AFFIRMED.**


　　John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant father.

　　Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

　　Tammy L. Banning of Tammy L. Banning, P.L.C., Waterloo, guardian ad litem for minor child.


　　Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

This case involves the termination of a parent's rights pursuant to Iowa Code chapter 232 (2017). Ricky appeals from an order terminating his parental rights in his child K.H.-K. (born 2016). The child's mother consented to the termination of her parental rights and does not appeal. On appeal, Ricky challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of his parental rights and argues termination of the parent-child relationship is not in the best interest of his child.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (setting forth the statutory framework). "The State has the burden to prove its case by clear and convincing evidence. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest in raising his child." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016).

We first address the sufficiency of the evidence supporting the grounds authorizing the termination of Ricky's parental rights. Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re*

*A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We turn our attention to Iowa Code section 232.116(1)(e). That provision authorizes the termination of parental rights where "[t]here is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so." Iowa Code § 232.116(1)(e)(3). Significant and meaningful contact

> includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e)(3). Reasonable effort requires more than a single act and is viewed in conjunction with the significant and meaningful contact requirement. *See In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015).

Here, there is clear and convincing evidence supporting termination of Ricky's parental rights pursuant to section 232.116(1)(e). The child was removed from the care of the mother due to her substance abuse. At the time of removal, Ricky was the putative father, but he refused any involvement until testing confirmed his paternity. Because of his refusal to be involved, Ricky was not a placement option. From the time paternity was established in September 2016 to the time of the termination hearing in March 2018, Ricky had little interaction with the child. Ricky told the caseworkers he had no interest in visiting the child, and he backed up his statements with deliberate inaction. Over the pendency of the

case, Ricky exercised visitation only sporadically for a total of approximately twelve supervised visits. On most occasions, Ricky cancelled scheduled visits. Ricky did not provide financial support for the child. Ricky also failed to make reasonable efforts to resume the care of his child by following the case plan. He would not engage in drug testing despite repeated requests. He refused to sign release forms for any substance-abuse or mental-health information. He refused to engage in parenting services. He would not communicate with service providers. He was described as "defiant, argumentative, disrespectful, blaming others, demanding, and uncooperative." When asked why he refused to comply with the case plan, Ricky testified "there was no reason why I had to buy something that was mine." In other words, he had no reason to expend the effort to obtain something that was already his.

Rather than assuming the duties of being a parent, Ricky actively rejected the duties of being a parent. There is clear and convincing evidence supporting this ground authorizing the termination of Ricky's rights. *See In re J.M.*, No. 17-2073, 2018 WL 1182544, at *4 (Iowa Ct. App. Mar. 7, 2018) (finding section 232.116(1)(e) requires more than minimum efforts to maintain significant and meaningful contact); *In re D.W.*, No. 17-0281, 2017 WL 1735934, at *3 (Iowa Ct. App. May 3, 2017) (affirming termination where "[o]ther than sporadic attendance at visitation, the father did not comply with any of the case plan requirements" and noting "Significant and meaningful contact is defined as more than just visitation, it requires 'a genuine effort to complete the responsibilities' set forth in the case permanency plan, to communicate with the child, and to 'establish and maintain a place of importance in the child's life").

Ricky also contends termination is not in the child's best interest. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). When determining best interest, it is important to consider both the long-term and short-term interests of the child. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

We conclude there is clear and convincing evidence establishing the termination of Ricky's parental rights is in the best interest of the child. Ricky has shown little interest in his child. By his own admission, Ricky has a limited bond with the child. Ricky has not demonstrated any capacity to meet the social and emotional needs of the child. In contrast, the child has been thriving in a loving foster home since June 2017. Also at the home is K.H.-K.'s younger half-sister, and the two share a close bond. The child is safe and well integrated into the foster family. The foster mother testified that the family is willing to adopt K.H.-K. While Ricky has recently expressed a desire to begin complying with services, the child should not have to wait. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777. K.H.-K. deserves permanency. We conclude that termination of Ricky's parental rights is in the child's best interest.

For these reasons, we affirm the juvenile court order terminating Ricky's parental rights in K.H.-K.

**AFFIRMED.**